# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRON ANDREW CHATMAN,

Defendant-Appellant.

UNPUBLISHED
September 15, 2015

No. 318085
Macomb Circuit Court
LC No. 2013-000382-FC

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct, MCL 750.520b(1)(f) (personal injury and force or coercion), fourth-degree criminal sexual conduct, MCL 750.520e(1)(a) (victim at least 13 but less than 16 years of age and defendant is five or more years older)[1], and manufacturing fewer than 20 plants of marijuana, MCL 333.7401(2)(d)(*iii*). Defendant was originally sentenced to 17 ½ to 40 years' imprisonment for the first-degree criminal sexual conduct conviction, 256 days in jail for the fourth-degree criminal sexual conduct conviction, and one to four years' imprisonment for the manufacturing fewer than 20 plants of marijuana conviction. During proceedings on remand from this Court, see *People v Chatman*, unpublished order of the Court of Appeals, entered October 10, 2014 (Docket No. 318085), defendant was resentenced to 14 years and 7 months to 40 years' imprisonment for the first-degree criminal sexual conduct conviction, 256 days in jail for the fourth-degree criminal sexual conduct conviction, and one to four years' imprisonment for the manufacturing fewer than 20 plants of marijuana conviction. We affirm.

Defendant first argues that the trial court erred in denying his motion to suppress evidence of his statement to police. We disagree. "On appeal from a ruling on a motion to suppress evidence of a confession, deference is given to the trial court's findings. The record is reviewed de novo, but an appellate court will not disturb the trial court's factual findings unless they are clearly erroneous." *People v Harris*, 261 Mich App 44, 53; 680 NW2d 17 (2004). "A

---

[1] Defendant was charged with second-degree criminal sexual conduct, MCL 750.520c(1)(f) (personal injury and force or coercion), but the jury instead found him guilty of the alternative charge of fourth-degree criminal sexual conduct.

finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made. However, deference is given to the trial court's assessment of the weight of the evidence and credibility of witnesses." *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003) (citation omitted).

In *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005), this Court summarized the relevant legal principles in this area:

> A criminal defendant has a constitutional right to counsel during interrogation. When a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until such counsel arrives. However, the defendant's invocation of his right to counsel must be unequivocal. If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [the United States Supreme Court's] precedents do not require the cessation of questioning. [Quotation marks and citations omitted.]

For example, a suspect's statement that "[m]aybe I should talk to a lawyer" has been held insufficient to invoke the right to counsel or to require the cessation of questioning. *Id*. at 711, citing *Davis v United States*, 512 US 452, 462; 114 S Ct 2350; 129 L Ed 2d 362 (1994). In *Tierney*, 266 Mich App at 711, this Court held that the defendant's statements that "[m]aybe I should talk to an attorney" or "I might want to talk to an attorney" failed to invoke the constitutional right to counsel because the statements were not unequivocal demands for counsel. See also *People v McKinney*, 488 Mich 1054 (2011) ("The defendant's statement that he would 'just as soon wait' until he had an attorney before talking to the police, followed immediately by his statement that he was willing to discuss the 'circumstances,' was not an unequivocal assertion of the right to counsel or a statement declaring an intention to remain silent.").

In this case, the underlying facts concerning the interrogation are undisputed. The video of the interview reflects that Clinton Township Police Detective Dan Quinn read defendant his *Miranda*[2] rights and that defendant signed a form waiving those rights. Then, early in the interview, defendant said he was not going to admit to anything but that he made "some bad choices" and that he wanted to "rectify the situation" and get it "behind" him so he could get on with his life, whether it be "in prison or free." Quinn questioned defendant further concerning his "side" of what occurred so that Quinn could make sure the charges were appropriate for what happened. Defendant responded, "[B]efore I go into it in that depth, I'd rather talk to a lawyer first, before I go into it in that depth." Defendant then continued talking. Quinn then asked defendant if he thought he made some "bad choices that morning." Defendant responded, "Well, of course, man, yeah, yes, I did." A couple minutes later, on further questioning, defendant again stated that he was not "going to go in depth about the situation right now, man." Quinn then asked, "You don't want to try and clear it up right now?" Defendant responded, "Well, not

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

right now. I'd rather wait until I talk to a lawyer and see what type of charges I have against me, or what can be done to get this behind me."

The trial court correctly concluded that defendant did not unequivocally invoke his right to counsel. Early in the interview, defendant admitted making "bad choices" but said on further questioning that he would rather talk to a lawyer before discussing the matter "in depth" and then continued talking. Later, defendant said he was not "going to go in depth about the situation right now[]" and, when asked if he wanted to "clear it up right now," defendant stated, "Well, not right now. I'd rather wait until I talk to a lawyer and see what type of charges I have against me, or what can be done to get this behind me." Defendant's first reference to a lawyer expressly indicated a desire to talk to counsel before discussing the allegations "in depth." Defendant did not unambiguously ask to speak to counsel or demand that questioning cease until he spoke to a lawyer. Rather, he expressed a declination to engage in a detailed discussion of the incident until he spoke to a lawyer. His second comment about a lawyer also followed another assertion that he did not wish to discuss the incident in depth and was in response to a question whether he wished to clear the matter up. Overall, it appears that Quinn reasonably interpreted defendant's comments as expressing a declination to discuss the incident *in detail* until defendant spoke to a lawyer. Because defendant did not unequivocally invoke his right to counsel, Quinn was not required to cease questioning. *Tierney*, 266 Mich App at 710-711. Therefore, the trial court properly denied defendant's motion to suppress his statement to police.

Defendant next argues that the amendment of the charges at the conclusion of the preliminary examination arose from prosecutorial vindictiveness. In particular, defendant contends that the prosecutor violated defendant's due process rights by charging him with first-degree criminal sexual conduct after defendant refused to waive a preliminary examination on the lesser charge of third-degree criminal sexual conduct, MCL 750.520d(1)(a) (victim at least 13 but less than 16 years of age). We disagree.

An assertion of prosecutorial vindictiveness presents a due process issue, *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996), which this Court reviews de novo, *People v Brown*, 239 Mich App 735, 750; 610 NW2d 234 (2000). However, because the issue was not raised, addressed, and decided below until after this Court remanded the case to the trial court, the issue is not preserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007); see also *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) ("In order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error.") (quotation marks, ellipses, and citations omitted). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. at 559.

The prosecutor possesses the sole and exclusive authority to prosecute for violations of offenses against the state. *People v Jones*, 252 Mich App 1, 6; 650 NW2d 717 (2002). That is, "[a] prosecutor, as the chief law enforcement officer of a county, is granted the broad discretion to decide whether to prosecute or what charges to file." *People v Williams*, 244 Mich App 249, 253; 625 NW2d 132 (2001).

In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. [*Bordenkircher v Hayes*, 434 US 357, 364; 98 S Ct 663; 54 L Ed 2d 604 (1978) (quotation marks and citation omitted).]

"Thus, the trial court's authority over the discharge of the prosecutor's duties is limited to those activities or decisions by the prosecutor that are unconstitutional, illegal, or ultra vires." *People v Morrow*, 214 Mich App 158, 161; 542 NW2d 324 (1995); see also *Jones*, 252 Mich App at 6-7.

"It is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996); see also *Bordenkircher*, 434 US at 363 ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]").

Such punishment is referred to as prosecutorial vindictiveness. There are two types of prosecutorial vindictiveness, presumed vindictiveness and actual vindictiveness. Actual vindictiveness will be found only where objective evidence of an expressed hostility or threat suggests that the defendant was deliberately penalized for his exercise of a procedural, statutory, or constitutional right. The burden is on the defendant to affirmatively establish actual vindictiveness. The mere threat of additional charges during plea negotiations does not amount to actual vindictiveness where bringing the additional charges is within the prosecutor's charging discretion. [*Ryan*, 451 Mich at 36 (quotation marks and citations omitted).]

Vindictiveness is presumed when a reasonable likelihood exists that the prosecutor acted vindictively. *United States v Goodwin*, 457 US 368, 373; 102 S Ct 2485; 73 L Ed 2d 74 (1982). "[I]t is well established that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is not sufficient to warrant presuming that subsequent changes in the charging decision are vindictive and therefore violative of due process." *People v Goeddeke*, 174 Mich App 534, 536; 436 NW2d 407 (1988), citing *Goodwin*, 457 US at 383, and *Bordenkircher*, 434 US 357; see also *Jones*, 252 Mich App at 8 (citing *Goeddeke* for this proposition).

In addition, the United States Supreme Court has explained:

An initial indictment – from which the prosecutor embarks on a course of plea negotiation – does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forego legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded. [*Goodwin*, 457 US at 380.]

-4-

As further elucidated in *United States v Gamez-Orduno*, 235 F3d 453, 462-463 (CA 9, 2000)[3], citing *Bordenkircher*, 434 US at 363-364:

> The Supreme Court, and this court, have recognized that prosecutors will often, as a plea negotiation tactic, threaten increased charges during the course of plea negotiations, and later, if no guilty plea is forthcoming, make good on that threat. Recognizing that such prosecutorial conduct is not meaningfully distinguishable from charging more strictly at the outset and then reducing the charges as a result of plea negotiations, the courts have concluded that threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process.

In this case, defendant has not articulated a ground on which to presume vindictiveness. There is no basis in the record to find a reasonable likelihood that the prosecutor acted vindictively. As discussed, the mere fact that a defendant declines to plead guilty and forces the prosecutor to prove its case does not support a presumption that the prosecutor acted vindictively in seeking amendment of the complaint to charge a greater offense. See *Jones*, 252 Mich App at 8, 10; *Goeddeke*, 174 Mich App at 536.

Nor has defendant demonstrated actual vindictiveness. Defendant contends that he was punished for exercising his statutory right to a preliminary examination. See *People v Johnson*, 427 Mich 98, 103-104; 398 NW2d 219 (1986) (the state and the defendant are entitled to a preliminary examination under MCL 766.1). But there is no evidence that the prosecutor expressed hostility or a threat suggesting that defendant was being deliberately penalized for exercising that right. Karen Lemke, the attorney who represented defendant at the preliminary examination, did not recall the prosecutor ever expressing any hostility, anger, or threats toward defendant or Lemke regarding the preliminary examination. Lemke was never told that the charges would be amended in order to punish defendant or to express anger at him for exercising his right to the preliminary examination, nor did Lemke ever get the impression that such punishment or expression of anger was occurring. Lemke understood there was an informal policy of the prosecutor in criminal sexual conduct cases to "undercharge" defendants to encourage the possibility of a plea agreement so that the complainant would not have to testify. Lemke stated that she is advised beforehand that if the preliminary examination is not waived, the charges will be amended to reflect the evidence if the court so approves, and that this is what happened in this case. Lemke acknowledged that she knew one and one-half months before the preliminary examination that there was a possibility of amendments on the basis of the evidence produced at that proceeding. Rebecca Oster, the charging prosecutor who tried the case, testified that she originally chose to authorize third-degree criminal sexual conduct as part of an effort to obtain a plea bargain so that the complainant, PS, who had learning disabilities and emotional issues, would not have to testify, but that if PS was forced to testify, then Oster would move to amend the complaint based on what the facts showed at the preliminary examination.

---

[3] The decisions of lower federal courts are not binding but may be considered for their persuasive value. *People v Patton*, 285 Mich App 229, 234; 775 NW2d 610 (2009).

These facts do not establish that defendant was being punished for exercising his right to a preliminary examination. Rather, the charges were amended to conform to the evidence at the preliminary examination, after a lesser offense had originally been charged as part of an effort to obtain a plea agreement. Defendant does not contest that the evidence produced at the preliminary examination supported a charge of first-degree criminal sexual conduct; it is thus beyond dispute that the amendment adding this charge fell within the prosecutor's charging discretion. Moreover, defendant suffered no prejudice because his attorney was aware well in advance of the preliminary examination of the possibility of such an amendment.

Defendant next argues that the trial court abused its discretion in denying his motion to sever the manufacturing marijuana charge from the criminal sexual conduct charges. Defendant claims that the marijuana charge is unrelated to the other charges. We disagree. "Whether defendant's charges are related is a question of law that we review de novo. The court's ultimate ruling on a motion to sever is reviewed for an abuse of discretion." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005) (citation omitted). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

MCR 6.120(B) provides, in relevant part:

On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C) [which requires the severance of unrelated offenses], the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

In this case, the trial court correctly concluded that the manufacturing marijuana charge was related to the criminal sexual conduct offenses. Defendant admitted during his statement to the police that he had used marijuana on the night before the sexual assault occurred. He also agreed that his "bad decisions" that morning were made because of "substance issues." He later agreed again that his "substance issues . . . trigger[] poor decisions." He answered in the

affirmative when asked whether "some inappropriate or some bad decisions that morning . . . were triggered by being under the influence that night." Moreover, the police confiscated marijuana plants from a closet in the apartment of defendant's girlfriend, Shari Starks, and the closet contained men's clothes and shoes; this confiscation occurred while the police were investigating the criminal sexual conduct offenses. Defendant often stayed in Shari's apartment, which is where the sexual molestation had occurred earlier on the same date that the marijuana plants were confiscated. In light of these facts, the trial court correctly reasoned that the marijuana and criminal sexual conduct offenses were related because those offenses involved a series of connected acts and were based on the same conduct. It was therefore appropriate for the offenses to be joined, MCR 6.120(B)(1), and the trial court did not abuse its discretion in denying the motion to sever.

Defendant next argues that the failure of the trial court's video system to record the audio portion of the first 50 minutes of jury selection denied defendant his due process right to proper appellate review. We disagree. We note that we remanded this case, in part, for reconstruction of the record. Thus, we address only defendant's contention that the record as reconstructed remains inadequate to afford proper appellate review of his issues. Whether the unavailability of a transcript denies a defendant his due process right to proper appellate review presents a constitutional issue, which is reviewed de novo. See *People v Rodriguez*, 251 Mich App 10, 25; 650 NW2d 96 (2002).

"[T]he inability to obtain the transcripts of criminal proceedings may so impede a defendant's right of appeal that a new trial must be ordered." *People v Horton (After Remand)*, 105 Mich App 329, 331; 306 NW2d 500 (1981). "The unavailability of transcripts does not, however, automatically require that the case be started over again." *People v Jackson*, 95 Mich App 565, 568; 291 NW2d 123 (1980). The defendant's right is satisfied if the surviving record is sufficient to evaluate the defendant's arguments on appeal. *People v Audison*, 126 Mich App 829, 835; 338 NW2d 235 (1983). To demonstrate the denial of a fair appeal, a defendant must demonstrate prejudice resulting from the missing transcripts; the defendant "must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford v Brown*, 806 F2d 83, 86 (CA 6, 1986). Unless there is evidence to the contrary, a presumption of regularity exists such that "[d]oubts should be resolved in favor of the integrity, competence and proper performance of . . . official duties by the judge and the State's attorney." *People v Iacopelli*, 141 Mich App 566, 568; 367 NW2d 837 (1985).

In this case, the existing record, including the reconstruction on remand of the missing audio portion of the first 50 minutes of jury selection, is sufficient to review defendant's appellate claims. As the trial court explained, the only missing portions of the record pertained to the trial court's preliminary instructions to the prospective jurors and the court's voir dire of the first three jurors. The trial court described on remand the preliminary instructions that it typically gives to prospective jurors and stated that it has been consistent in giving those preliminary instructions. The court also explained the questions that it typically asks prospective jurors, which included questions regarding basic personal information and whether they understand the presumption of innocence. The questions asked by the parties of the jurors are not missing from the record. Further, it was agreed on remand that defendant did not use all of his peremptory challenges.

Defendant fails to demonstrate prejudice arising from the missing audio of the first 50 minutes of jury selection. Instead, defendant says merely that he needs an accurate transcript "in order to discover potentially meritorious appellate issues[]," and that without a transcript, he cannot determine whether his trial counsel effectively represented him and should have exercised challenges for cause to prevent the seating of biased jurors. Defendant also claims that the missing audio makes it impossible to review defendant's argument regarding the court's references to jurors only by their badge numbers without giving a cautionary instruction.

Defendant's arguments are unsupported and devoid of merit. There is no evidence that any biased jurors were seated or that defense counsel was ineffective in failing to challenge such jurors. As discussed, the trial court determined on remand that it typically asks questions designed to determine whether a prospective juror is biased, and the portion of the jury selection proceedings that did have sound demonstrated that jurors were asked such questions in this case and were told to address the court if any questions asked of other jurors applied to them also. In addition, the court excused three prospective jurors for cause. Defendant fails to identify even a general factual basis to conclude that defense counsel was ineffective in failing to seek the removal of any prospective jurors. It is important to note that an attorney's decisions regarding the selection of jurors is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001).

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. [*People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (quotation marks and citations omitted).]

Therefore, even if a full transcript of the jury selection proceedings existed, it is highly unlikely that defendant could demonstrate ineffective assistance of counsel on the grounds to which he alludes. Moreover, the portion of the jury selection with sound includes an exchange in which the court explained the presumption of innocence and asked the prospective jurors if they agreed with this principle, and the jurors responded, "Yes." After the jury was selected, the jurors took an oath to justly decide the case and to render a true verdict based only on the evidence introduced and in accordance with the court's instructions. Therefore, even if any jurors had exhibited potential bias, the jurors' assurances and oath were sufficient to protect defendant's right to a fair trial. Finally, defendant's argument challenging the court's references to the jurors by their badge numbers is capable of being reviewed from the existing record, as discussed *infra*. Accordingly, defendant has failed to demonstrate prejudice arising from the missing audio portion of the jury selection proceedings. Defendant's contentions are premised on speculation, which is insufficient to demonstrate the denial of a fair appeal. *Bransford*, 806 F2d at 86.

Defendant next argues that the trial court erred in referring to the jurors by their badge numbers rather than by their names. We disagree. This Court reviews for an abuse of discretion the trial court's decision to refer to jurors by number rather than by name. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). During trial, defendant failed to object to the court's practice of referring to jurors by badge numbers; accordingly, this issue is unpreserved.

*People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Unpreserved issues are reviewed for plain error affecting the defendant's substantial rights. *Id*.

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241 Mich App at 522. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523. The *Williams* Court concluded that the defendant's due process rights were not violated by the use of juror numbers instead of names at trial because there was no indication that the parties has juror information withheld from them and there was nothing in the record to indicate that the use of numbers undermined the presumption of innocence. *Id*. at 523-525. In *Hanks*, 276 Mich App at 92-95, this Court followed *Williams*, but did "strongly urge trial courts to advise the venire that any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant." *Id*. at 94.

Here, defendant has not established plain error affecting his substantial rights in connection with the reference to the jurors by their numbers instead of their names. First, there is no indication that defendant had juror information withheld from him. In his brief on appeal, defendant acknowledged that he had access to the background information for the jurors; additionally, on remand, the trial court explained that the attorneys for the parties had access to the jurors' names and numbers, and defendant's appellate counsel agreed. Further, defendant was not prevented from conducting meaningful voir dire, and indeed, the record reflects that defendant's trial counsel carefully examined the prospective jurors. Second, there is nothing in the record to indicate that the use of numbers to identify jurors undermined the presumption of innocence. The trial court stated that it told the jurors that it was the practice of the court to refer to jurors by number rather than by name, which would have made it sufficiently clear to the jurors that numbers were not being used because of anything related to defendant in particular. Moreover, the trial court questioned the jurors to ensure they understood that defendant was presumed innocent and that it was the prosecutor's burden to prove defendant's guilt beyond a reasonable doubt. The trial court instructed the jury repeatedly regarding the presumption of innocence and the prosecutor's burden to prove defendant's guilt beyond a reasonable doubt. A jury is presumed to have followed the trial court's instructions. *Unger*, 278 Mich App at 235. There is no basis to presume prejudice from the trial court's actions in this case. *Williams*, 241 Mich App at 525. Therefore, defendant's due process rights were not violated by the use of the jurors' badge numbers instead of their names at trial. *Id*.

Defendant next argues that he was denied a fair trial by the disclosure to the jury of the trial court's pretrial ruling that defendant's *Miranda* rights were not violated. We disagree. Defendant frames this issue as one of improper judicial remarks to the jury. To preserve a claim of judicial misconduct, a defendant must object to the behavior in the trial court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). As defendant concedes, he did not object to the trial court's remarks that are challenged on appeal. Therefore, this issue is unpreserved.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, ___ Mich ___, ___; ___ NW2d ___ (2015) (Docket No. 149380); slip op at 5. Unpreserved issues are reviewed for plain

error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *Stevens*, ___ Mich at ___; slip op at 8, our Supreme Court explained:

A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id*. at 9. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*.

In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. [*Id*. (citations omitted).]

Defendant argues that he was denied a fair trial by the court's disclosure to the jury that it had ruled that there was no violation of defendant's *Miranda* rights. Because it is for the jury to determine whether a purported confession was ever made, this Court has held that it is improper to inform the jury of a pretrial ruling that the statement was voluntarily made. See *People v Corbett*, 97 Mich App 438, 442-443; 296 NW2d 64 (1980), citing *People v Gilbert*, 55 Mich App 168; 222 NW2d 305 (1974). See also *People v Kincaid*, 136 Mich App 209, 215; 356 NW2d 4 (1984) ("It is error requiring reversal for a trial judge to inform a jury that the defendant's statement has been found to be voluntary in a pretrial . . . hearing."). It is likewise improper to inform the jury that the police did not act unlawfully in obtaining a statement. *Id*. at 215-216. Nonetheless, this Court has held that if it is undisputed that the defendant made the statement, reversal is not required. *Corbett*, 97 Mich App at 443.

In this case, defendant never disputed making the statement, nor does he do so on appeal. Indeed, during his testimony at trial, defendant explained what he claimed to have meant in some of his comments in his statement, the recording of which was shown to the jury, thereby acknowledging that he made the statement.[4] Defendant also agreed that he "obviously recall[ed] speaking with Detective Quinn[.]" Defendant testified that he was thinking "the whole time in the whole interview" about his family, his past, and "the whole situation." Therefore, because it

---

[4] For example, defendant acknowledged while testifying at trial that "on the tape [he] said [he] made bad choices[]" and then explained what he claimed to have meant by that.

is uncontested that defendant made the statement, reversal is not required on the basis of the trial court's comment disclosing to the jury the pretrial ruling that defendant's *Miranda* rights were not violated. *Id*. Moreover, there is no indication or claim that the trial court's tone and demeanor in making these remarks were inappropriate, or that any of the other factors delineated in *Stevens* support a conclusion that the trial court's brief remarks improperly influenced the jury by creating the appearance of advocacy or partiality against defendant.

It is also notable that, at the close of trial, the trial court correctly instructed the jury that it was for the jury to determine whether defendant actually made the statement and to give the statement whatever weight the jury thought it deserved. See *Kincaid*, 136 Mich App at 216 (finding no error requiring reversal in informing the jury that the police had not acted unlawfully in obtaining a statement because, *inter alia*, the trial court "properly instructed the jury regarding the defendant's statement at the close of the trial[.]"). The trial court further instructed the jury that the court's comments and rulings were not evidence, that its comments and instructions were not intended to express a personal opinion or to influence the jurors' votes, and that the jurors should pay no attention to any opinion they thought the court might have. The jury is presumed to have followed the trial court's instructions. *Unger*, 278 Mich App at 235. These instructions were sufficient to ensure a fair trial despite any minor or brief inappropriate comment. See *Stevens*, ___ Mich at ___; slip op at 14-15. Accordingly, defendant was not denied a fair trial by the trial court's remarks.

Defendant next argues that he was denied the effective assistance of counsel in various respects. We disagree. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). During the proceedings on remand from this Court, defendant filed a motion for new trial that included the issue of prosecutorial vindictiveness and the purported ineffectiveness of defendant's counsel to object on that basis to the amendment of the charges. The other grounds asserted on appeal for alleging ineffective assistance of counsel were not part of the remand proceedings. Therefore, the issue whether defense counsel was ineffective for failing to object to the alleged prosecutorial vindictiveness is preserved, but the remaining grounds for alleging ineffective assistance are not preserved.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *Id*. Findings of fact are reviewed for clear error, but the ultimate constitutional issue for an ineffective assistance claim is reviewed de novo. *Id*. This Court's review of the unpreserved portions of the issue is for mistakes apparent on the existing record. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411. This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *Id*. The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d

-11-

291 (2001). A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that defense counsel was ineffective for failing to object on the ground of prosecutorial vindictiveness to the amendment of the charges at the preliminary examination. But as discussed earlier, the amendment of the charges at the preliminary examination did not arise from prosecutorial vindictiveness. Defense counsel was not ineffective for failing to advance a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that defense counsel was ineffective in inviting the trial court's disclosure to the jury of the pretrial ruling that defendant's *Miranda* rights were not violated. Defense counsel questioned Quinn at trial concerning defendant's purported requests for a lawyer during the custodial interrogation. The prosecutor then objected and asked the trial court to inform the jury of the pretrial ruling that there was no violation of defendant's *Miranda* rights, and the trial court confirmed to the jury that this indeed was the court's pretrial ruling. However, even if defense counsel's performance in asking these questions was objectively unreasonable, defendant cannot establish prejudice. As discussed earlier, defendant never disputed making the statement and acknowledged during his trial testimony that he made the statement. See *Corbett*, 97 Mich App at 443.

Further, the trial court's brief remarks regarding this matter were not so prejudicial that they created the appearance of advocacy or partiality against defendant. And, as discussed, the trial court properly instructed the jury that it was their duty to determine whether defendant actually made the statement, that the court's comments and instructions were not meant to express a personal opinion, and that any opinion the jurors thought the court held should not influence the jurors' votes. Defendant has failed to establish a reasonable probability of a different outcome but for defense counsel's allegedly deficient performance in inviting the trial court's comment on the pretrial ruling.

Defendant next contends that defense counsel was ineffective for eliciting testimony from Shari that defendant had watered a marijuana plant that the police confiscated from a closet in Shari's apartment. Defendant cites the following testimony from defense counsel's cross-examination of Shari:

> *Q.* The marijuana plant that was found in the closet, did [defendant] bring that marijuana plant into the home?
>
> *A.* No.
>
> *Q.* Did [defendant] ever water that plant?
>
> *A.* Yes.
>
> *Q.* Did [defendant] ever sell any marijuana from that plant?
>
> *A.* No.

-12-

Defense counsel's decision regarding how to cross-examine witnesses comprises a matter of trial strategy. *Petri*, 279 Mich App at 413; *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). "A failed strategy does not constitute deficient performance." *Petri*, 279 Mich App at 412. Defense counsel has "wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Shari testified on direct examination that defendant was not growing marijuana in her apartment and that the marijuana confiscated from the closet was her own marijuana that she was growing for herself. But later in her direct examination, Shari stated that she was growing the marijuana plants for herself and defendant. She also indicated in her direct examination that defendant's clothes were in the closet where the marijuana was found. Given this testimony establishing an association between defendant and the marijuana, defense counsel may have reasonably concluded that cross-examination was needed to attempt to minimize the extent of defendant's involvement in the production of the marijuana. Defense counsel elicited helpful testimony from Shari that defendant did not bring the marijuana into her home and that he was not selling marijuana from the plant. Further, although Shari stated that defendant had watered the plant, she did not indicate how many times defendant watered it or whether he knew it was marijuana. Even if defense counsel's strategy was not entirely successful, this does not comprise deficient performance. *Petri*, 279 Mich App at 412.

Defendant next contends that defense counsel was ineffective for eliciting testimony from Quinn that there were allegations that defendant had molested another child, MW. This disclosure occurred while defense counsel was cross-examining Quinn about the investigation of the abuse of the complainant in this case, PS. Later, outside the presence of the jury, defense counsel moved for a mistrial because of Quinn's testimony alluding to MW having coming forward about an allegation of sexual abuse. The trial court denied the motion but indicated its willingness to provide a curative instruction. Defense counsel later stated that he had decided to forego a curative instruction:

> Your Honor, we're going to forego it. I think any arg-, any instruction highlights the testimony and reminds the jurors of that testimony. It was fleeting, I moved for mistrial, denied by the Judge, I don't want to dwell on it.

Defendant has not established that defense counsel's performance fell below an objective standard of reasonableness. It is apparent from the context in which the questions were asked that defense counsel was not attempting to elicit testimony regarding any allegation of sexual abuse of MW. Rather, it appears defense counsel was pursuing a strategy of challenging the quality of the investigation by suggesting that the police should have interviewed two children who were sleeping in the bedroom where defendant was alleged to have molested PS. Quinn's reference to MW's allegation of sexual abuse was not intentionally elicited by defense counsel. Defendant has not overcome the presumption that defense counsel's cross-examination of Quinn comprised a reasonable trial strategy. The fact that the strategy may not have succeeded does not establish that defense counsel was ineffective. *Kevorkian*, 248 Mich App at 414-415. Again, "many calculated risks may be necessary in order to win difficult cases." *Odom*, 276 Mich App at 415. Moreover, as defense counsel noted outside the presence of the jury, Quinn's allusion to MW's allegation was fleeting, and it is not clear that the jury understood what was being referenced or that it influenced the jury's decision; this is why defense counsel opted to forego a curative instruction on the matter. Therefore, even if defense counsel's performance was

somehow deficient, defendant has not established a reasonable probability of a different outcome but for the deficient performance.

Relatedly, defendant also argues that the trial court abused its discretion in denying defendant's motion for a mistrial relating to the testimony concerning MW. We disagree. A trial court's decision regarding a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). We note that defendant failed to present any argument to support this claim, *Kevorkian*, 248 Mich App at 389, and, thus, abandoned this issue. *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

Regardless, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. "A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (quotation marks omitted).

> [A] mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way. Moreover, an unresponsive, volunteered answer to a proper question is not cause for granting a mistrial. This is especially true where the defendant has rejected the opportunity to have the jury charged with a cautionary instruction. [*People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988) (citations omitted).]

In *Waclawski*, 286 Mich App at 709-710, this Court upheld the denial of a mistrial where an isolated inappropriate comment by a witness was unresponsive and volunteered. In *Lumsden*, 168 Mich App at 299, this Court held that a mistrial was not warranted where a witness's references to other homicides allegedly committed by the defendant were unresponsive, volunteered answers to proper questions, the references to the homicides "were very fleeting and were not emphasized to the jury[,]" and a cautionary instruction, if requested, could have removed any taint. Here, Quinn's reference to MW's allegations was brief and isolated, and it was not emphasized to the jury; there is no reason to conclude that it influenced the jury's decision. Indeed, defense counsel chose to forego a curative instruction because Quinn's comment was so fleeting. The reference to MW's allegations did not comprise an error so egregious that any prejudicial effect could be removed in no way other than granting a mistrial. Therefore, the trial court's denial of a mistrial fell within the range of principled outcomes.

Defendant next argues that he is entitled to resentencing because the trial court improperly assessed points for offense variable 11. This issue is moot because defendant was already granted the requested relief when he was resentenced on remand. See *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009) ("Because defendant has already received the relief that she requested, this issue is moot."). "As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). Accordingly, we need not address this issue.

Finally, defendant argues that his judgment of sentence contains a clerical error. However, the error has since been corrected, as evidenced by the second amended judgment of sentence filed by the prosecutor. Accordingly, no further relief is necessary in regard to this claim.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood