# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LUCAS DANIEL GONZALES,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2016

No. 328060
Berrien Circuit Court
LC No. 2014-003822-FC

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of a child under 13 by an individual 17 years of age or older) and assault with intent to commit sexual penetration, MCL 750.520g(1). He appeals as of right. For the reasons explained in this opinion, we affirm.

During the summer of 2011, the 30-year-old defendant and the 11-year-old victim attended a bonfire at Cody Stack's home in Benton Harbor, Michigan. Among the other attendees was defendant's 14-year-old nephew, Gabriel Gonzalez. At the bonfire, the victim consumed alcohol, smoked marijuana, and ingested an unknown pill. The victim became heavily intoxicated, and at some point, she and Gabriel engaged in sexual intercourse in a bedroom at Stack's house. Afterward, the victim remained in the bedroom, and defendant joined her in the room for 5 or 10 minutes. Defendant had sexual intercourse with the victim at Stack's house. Later, defendant took the victim back to his house, which was nearby, and had sexual intercourse with her in his bedroom. Gabriel saw defendant and the victim have sexual intercourse in defendant's bedroom. Eventually, the victim reported that she had been assaulted. However, she described her memory of being sexually assaulted that evening as "flashes," and she could not identify her assailant.

During their investigation, the police interviewed Gabriel, who eventually admitted to having sexual intercourse with the victim the night of the bonfire.[1] The police also interviewed defendant, and he agreed to undergo a polygraph examination. After the polygraph was

---

[1] Gabriel later pleaded guilty to a sexual offense in juvenile court.

-1-

complete, the officers again interviewed defendant, and defendant admitted that he had sexual intercourse with the victim. Defendant signed a written confession stating that he had vaginal sex with the victim at Stack's house. The trial court denied a motion by defendant to suppress his statement, and the jury was presented with evidence of defendant's confession. In addition, as part of a plea agreement, Gabriel testified at trial that he saw defendant have sex with the victim on the night of the bonfire. The jury convicted defendant of two counts of CSC I and assault with intent to commit sexual penetration. Defendant now appeals as of right.

## I. MISTRIAL

On appeal, defendant first argues that he is entitled to a new trial because the prosecution referenced defendant's polygraph examination during trial. Specifically, at the end of the prosecutor's cross-examination of defendant, in the course of questioning defendant on the timeline of his arrest, the following exchange occurred:

> *Q*. You were never charged--
>
> *A*. I never knew–
>
> *Q*. –until after–
>
> *A*. –he was the one–
>
> *Q*. –the polygraph.
>
> *A*. –that raped her. I never knew she was raped.

Defense counsel objected to reference to "the polygraph" and moved for a mistrial, which the trial court denied.

We review the trial court's denial of defendant's motion for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (1999).

"Although reference to a polygraph test is inadmissible, it does not always constitute error requiring reversal." *People v Nash*, 244 Mich App 93, 98; 625 NW2d 87 (2000) (citations omitted). For example, reversal may not be required where the mention of a polygraph is "brief inadvertent and isolated." *Id.* (citation omitted). When determining whether polygraph references require reversal, this Court considers the following factors:

> (1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than

merely the fact that a test had been conducted. [*Id.* (citations and quotation marks omitted).]

Considering these factors in this case, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

First, the fact that defendant objected to the mention of the polygraph weighs in favor of granting mistrial. *Ortiz-Kehoe*, 237 Mich App at 514. However, this is the only factor that favors a mistrial. In terms of the second factor, the reference to the polygraph examination was inadvertently made while defendant and the prosecutor were speaking over each other. When defense counsel objected to the reference, the prosecutor was unaware that he had mentioned the polygraph at all, and defense counsel agreed that the comment had been inadvertently "blurted out." Third, the reference to the polygraph was not repeated. The prosecutor redacted reference of the polygraph from any evidence and no witnesses mentioned the polygraph. Thus, in the course of the entire trial, the prosecutor's reference to a "polygraph" was "an isolated, inadvertent comment," which weighs against granting a mistrial. *Id.* at 514-515. Fourth, there is nothing to suggest, and defendant does not argue, that the reference was an attempt to bolster a witness's credibility. Finally, the results of the test were not admitted, and defendant did not answer the question or even acknowledge that he ever took a polygraph examination. Cf. *id.* at 515. Overall, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

## II. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was deprived of his right to a fair trial as a result of prosecutorial misconduct. In particular, defendant contends that the prosecutor asked improper leading questions of the victim, asked argumentative questions of defendant's best friend Cody Stack, and attempted to bolster the credibility of prosecution witnesses through questions asked of Stack and defendant. We review these unpreserved claims of prosecutorial misconduct for plain error. *Unger*, 278 Mich App at 235. Reversal is not warranted where a curative instruction could have alleviated any prejudicial effect. *Id.*

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Id.* at 236. "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Thus, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *Id.* at 660. However, it would generally be improper to ask a defendant or a nondefendant witness to comment on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

First, defendant argues that it was misconduct for the prosecutor to use leading questions that called for speculation when examining the victim. In general, leading questions should not be used on direct examination "except as may be necessary to develop the witness' testimony." MRE 611(d)(1). However, leading questions do not necessarily amount to misconduct, and "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). The victim here

-3-

was 11 years old at the time of the incident and was 15 years old at the time of trial. Thus, insofar as the questions were leading, the prosecutor had some leeway to ask leading questions. Cf. *id.* (finding no misconduct in leading questions asked of a 13-year-old victim). Further, to the extent the prosecutor asked the victim about what "could" have occurred while she was "blacked out," in context, these questions were not a request for the victim to speculate on what happened that evening, but instead served to demonstrate the degree of the victim's intoxication and lack of memory of the night of the bonfire. Overall, the prosecution's questioning of the victim was not improper. Moreover, defendant makes no effort to establish how he was prejudiced by the questions posed to the victim. Thus, even assuming some impropriety, reversal is not required. *Id.* at 587-588.

Second, defendant also argues that the prosecutor improperly asked argumentative, demeaning questions when cross-examining Stack. Stack testified favorably to defendant at trial, claiming that the victim was rarely out of his sight that evening and that she could not have had sex with defendant. During cross-examination, the prosecutor asked Stack why, if this were the case, he did not come forward sooner or mention this important information to police. Stack responded that he was waiting for a subpoena, that he did not "know how the court system works," that he lost the phone number of the investigating officer, and that he did not know how to use a phonebook. The prosecutor followed up on these various remarks with what defendant now characterizes as argumentative questions regarding Stack's knowledge of the court system and whether he really expected people to believe he could not find a number for the police. In the context of Stack's responses during cross-examination, even if the questions were somewhat argumentative, we fail to see how the prosecutor's conduct amounted to misconduct or denied defendant a fair trial. See *Dobek*, 274 Mich App at 69; MRE 611(c). Moreover, a curative instruction could have alleviated any prejudice.

Third, defendant contends it was argumentative and improper for the prosecutor to ask Stack whether the victim was "pretty vulnerable" and "easy prey" on the night of the bonfire. These questions, which essentially asked Stack's opinion on the degree of the victim's intoxication based on his observations, were not improper. See MRE 701; l *Heyler v Dixon*, 160 Mich App 130, 148-149; 408 NW2d 121 (1987). Further, a curative instruction could have alleviated any potential prejudice, and thus defendant is not entitled to reversal.

Finally, defendant contends that the prosecution improperly bolstered witnesses' credibility (1) by asking defendant whether the victim and a police officer had reasons to lie and (2) by asking Stack whether Gabriel had a motive to lie about defendant and to incriminate himself by admitting that he had sex with the victim. Even assuming this questioning was an improper request for defendant and Stack to comment on the credibility of other witnesses, given defendant's confession and the other evidence of his guilt, defendant has not established outcome determinative prejudice. Moreover, any prejudicial effect could have been alleviated by a timely objection and curative instruction, and the jury was in fact instructed on the assessment of witness credibility. In these circumstances, defendant is not entitled to relief on appeal. *Unger*, 278 Mich App at 235.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues on appeal that his defense counsel was ineffective for failing to object to the prosecutor's questions. This unpreserved claim is reviewed for mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Objection to the prosecutor's good faith efforts to introduce evidence would have proved futile, and counsel is not ineffective for failing to raise a futile objection. *People v Putman*, 309 Mich App 240, 247; 870 NW2d 593 (2015). Further, even if some of the prosecutor's questions were improper, counsel may have made the reasonable strategic decision not to object in order to avoid drawing attention to an improper comment. See *Unger*, 278 Mich App at 242. And, defendant has failed to show that there is a reasonable probability that, but for counsel's failure to object to the prosecutor's questions, the result of the proceeding would have been different. *Petri*, 279 Mich App at 410. The prosecution offered significant evidence to support that defendant assaulted the victim, including defendant's own confession and Gabriel's testimony that he saw defendant and the victim enter defendant's bedroom, observed defendant having sexual intercourse, and heard the victim's voice say "no, no, no." Defendant does not offer any evidence to show that the outcome of the proceeding would have been different had his counsel objected to the prosecutor's questions. *Id*.

## IV. DOUBLE JEOPARDY

Defendant next argues on appeal that his double jeopardy rights were violated when he was convicted of assault with intent to commit sexual penetration and CSC I. This unpreserved double jeopardy claim is reviewed for plain error affecting the defendant's substantial rights. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

Both the United States and the Michigan constitutions protect a defendant from being placed in jeopardy twice for the same offense. US Const, Am V; Const 1963, art 1, § 15. "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). At issue in this case is the multiple punishments strand of double jeopardy. Cf. *People v Miller*, 498 Mich 13, 17-18; 869 NW2d 204 (2015).

> [W]hen considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream*[2] to discern legislative intent. [*Id*. at 19.]

The abstract legal elements test "focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments." *Id*. "[I]f each offense 'requires

---

[2] *People v Ream,* 481 Mich 223; 750 NW2d 536 (2008).

proof of a fact which the other does not' then there is no violation of double jeopardy." *People v Garland*, 286 Mich App 1, 5; 777 NW2d 732 (2009) (citation omitted).

Here, defendant was convicted of CSC I, MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of a child under 13 by an individual 17 years of age or older) and assault with intent to commit sexual penetration, MCL 750.520g(1). "Nowhere in the CSC chapter, MCL 750.520 *et seq.,* does the Legislature clearly express its intention" with regard to the permissibility of multiple punishments. *Garland*, 286 Mich App at 5. Accordingly, the abstract legal elements test must be applied. *Id.*

MCL 750.520b(1)(a) provides, "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if . . . [t]hat other person is under 13 years of age." See *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531(2014). Defendant was convicted under MCL 750.520b(2)(b), which also requires that the violation be committed by an individual 17 years of age or older. First-degree CSC is a general intent crime. *People v Nyx*, 479 Mich 112, 118; 734 NW2d 548 (2007); *People v Langworthy*, 416 Mich 630, 643; 331 NW2d 171 (1982).

In comparison, "the elements of assault with intent to commit CSC involving penetration are simply (1) an assault, and (2) an intent to commit CSC involving sexual penetration." *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004); MCL 750.520g(1). "An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Nickens*, 470 Mich at 628 (citations and quotation marks omitted). Assault with intent to commit sexual penetration "may be viewed as a specific intent crime." *Id*. at 631.

Considering the elements of each offense, each charge requires proof of an element that the other does not, so there is no double jeopardy violation. Cf. *Garland*, 286 Mich App at 5. MCL 750.520b(1)(a) and MCL 750.520b(2)(b) require proof of sexual penetration with a minor under 13 years of age, whereas neither sexual penetration nor the victim's age are an element of MCL 750.520g(1). Conversely, MCL 750.520g(1) requires proof that defendant intended to commit CSC involving penetration, whereas the defendant's intent is not an element of MCL 750.520b(1)(a) and MCL 750.520b(2)(b).[3] Therefore, because each offense contains an element

---

[3] Relying on *Nickens*, 470 Mich at 631, defendant claims that double jeopardy has been violated because, pursuant to *Nickens*, it would be impossible to commit CSC I without also committing assault with intent to commit CSC involving penetration. However, *Nickens* is inapposite because it considered CSC I under MCL 750.520b(1)(f) involving force or coercion, which is readily distinguishable from the age-based CSC I statutes at issue in this case under which an actor could unintentionally or accidentally commit an act of first-degree CSC by engaging in sexual penetration while ignorant of the victim's age. Compare *People v Cash*, 419 Mich 230, 242, 244; 351 NW2d 822 (1984) (holding that there is no "reasonable mistake of age" defense available to CSC involving a victim in a protected age group and that these offenses required no specific intent, rather the "perpetrator proceed[s] at his own peril regardless of his defense of ignorance or an honest mistake of fact") with *Nickens*, 470 Mich at 631 (concluding that there

that the other does not, defendant's convictions for CSC I and assault with intent to commit sexual penetration do not violate constitutional protections against double jeopardy. *Miller*, 498 Mich at 19; *Duenaz*, 306 Mich App at 107.

## V. STANDARD 4 BRIEF

In a Standard 4 brief, defendant contends that the trial court erred by denying his motion to suppress, that he was denied the effective assistance of counsel, and that the verdict was against the great weight of the evidence. We disagree.

## A. MOTION TO SUPPRESS

Defendant argues that his statement was involuntary, and its admission denied him a fair trial. Specifically, defendant contends that his statement was involuntary because he was detained and isolated from his family, repeatedly interrogated for a prolonged period of time, he was exhausted, he was threatened by police at the time he gave his statement, and because there was a long delay before he was arraigned before a magistrate.

Questions involving the voluntariness of confessions are reviewed de novo. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "When reviewing a trial court's

---

was "no circumstance in which an actor could unintentionally or accidentally use force or coercion to sexually penetrate his victim" such that the general intent required to commit CSC I under MCL 750.520b(1)(f) also necessarily satisfied the specific intent required to commit assault with the intent to commit CSC involving penetration).

Aside from *Nickens*, the dissent argues that *People v Johnson*, 406 Mich 320; 279 NW2d 534 (1979) supports the assertion that double jeopardy is violated by convictions for both CSC I and assault with intent to commit CSC involving penetration. However, *Johnson* was not a double jeopardy case. See *Johnson*, 406 Mich at 323 ("[W]e find it unnecessary to address the issue of whether the constitutional prohibitions against double jeopardy would be violated by a multiple conviction of criminal sexual conduct based upon one sexual act."). Instead, *Johnson* stands for the unremarkable proposition that a defendant could not be "convicted of multiple counts of CSC I pursuant to MCL 750.520b arising from a single act of penetration because each of the enumerated aggravating factors in MCL 750.520b were 'alternative ways of proving criminal sexual conduct in the first degree' rather than separate offenses." *Garland*, 286 Mich App at 6, quoting *Johnson*, 406 Mich at 331. See also *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998) ("Where there is a single sexual penetration, the various aggravating circumstances listed in MCL 750.520 constitute alternative means of proving a single CSC I offense, and would not support convictions of separate and distinct CSC I offenses."). In contrast, defendant has been charged under two separate statutes: MCL 750.520b and MCL 750.520g. Cf. *Garland*, 286 Mich App at 6. Although the charges relate to the same conduct by defendant, it is well-settled that, "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *People v Smith*, 478 Mich 292, 305; 733 NW2d 351 (2007) (citation omitted).

determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's factual findings absent clear error." *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made." *Id*. at 373. We give deference to the trial court's findings regarding the credibility of witnesses and the weight of the evidence. *Id.*

"The right against self-incrimination is guaranteed by both the United States Constitution and the Michigan Constitution." *Tierney*, 266 Mich App at 707, citing US Const, Am V; Const 1963, art 1, § 17. "The test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988) (citations and quotation marks omitted). When determining the voluntariness of a confession, among other things, courts should consider:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness." *Id*. Ultimately, the court should consider whether "the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id*.

Here, when viewed under the totality of the circumstances, the trial court did not err when it denied defendant's motion to suppress his statement. The *Cipriano* factors weigh in favor of finding that defendant's statement was voluntary. Defendant was around 34 years old when he made his statement, and the record reflects that defendant could speak and understand English fluently and was able to read fairly well. Indeed, while there was some evidence of learning difficulties, at the hearing on the motion to suppress, the trial court noted that defendant understood the questions posed to him during the hearing and that he successfully read aloud the statements in his confession at the hearing. There is nothing on the record to support that the questioning was especially repeated or prolonged or that there was an unnecessary delay in bringing defendant before a magistrate. Indeed, at the time defendant made his statement, he had not been arrested. Rather, defendant was not detained and he was free to leave at any time. Further, the record indicates that defendant was advised of his constitutional rights before making the statement and that he made a voluntary, knowing, and understanding waiver of those rights. There is nothing to suggest that defendant was injured, intoxicated or drugged, in ill

health, deprived of food, sleep, or medical attention, or that he was abused at any time. Defendant's claims of "unpleasant" conditions are simply not supported by the record.

Defendant argues that his confession was involuntary because he was in an "exhausted emotional state" during his polygraph examination. However, there is no indication that defendant ever asked to take a break from the examination or reported to the officers that he was too exhausted to continue. Defendant also argues that the police threatened him by stating that, if he did not confess, it would be like pouring gasoline on a fire, or that the victim would pour gasoline on him. The only evidence of such a statement came from defendant, who conceded that the mention of gasoline was a "reference" of some sort, that he continued to speak to police after this comment, and that he never indicated to police that he felt unsafe. In other words, it appears that any purported reference to pouring gasoline on a fire was nothing more than use of an idiom and the record does not support defendant's claim that the officers threatened him. Considering the totality of the circumstances, defendant's statement was made voluntarily. *Cipriano*, 431 Mich at 333-334. Accordingly, there was no error in the trial court's conclusion that defendant made the statement voluntarily or in its decision to deny defendant's motion to suppress. *Shipley*, 256 Mich App at 372-373.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues on appeal that he was denied the effective assistance of counsel because defense counsel failed to impeach Gabriel's testimony using Gabriel's prior inconsistent statements to police. However, the decision regarding how to question witnesses is presumed to be a matter of trial strategy, *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002), and defendant has not overcome the presumption that counsel provided effective assistance. Contrary to defendant's argument, the record shows that defense counsel questioned Gabriel on the inconsistencies in his testimony and specifically asked Gabriel about his lies to the police. On this record, defendant has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness. *Petri*, 279 Mich App at 410. He also failed to provide anything to support that he was prejudiced by his trial counsel's performance. *Id*.

## C. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that his conviction was against the great weight of the evidence. According to defendant, Gabriel's testimony was unbelievable because Gabriel had a motive to lie to obtain a plea agreement for his own criminal conduct the night of the bonfire. According to defendant, Gabriel's testimony constituted the "only" evidence against defendant and, in such circumstances, the verdict was against the great weight of the evidence.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). It is for the jury to determine the credibility of witnesses. *Id*. at 637. However, exceptions to this rule exist where the testimony was "patently incredible or defies physical

realities," or where the testimony was "seriously impeached and the case was marked by uncertainties and discrepancies." *Id*. at 643-644 (citations and quotation marks omitted).

Here, defendant's convictions were not against the great weight of the evidence. The victim testified that she was sexually assaulted on the night of the bonfire when she was 11 years old and defendant confessed to having sexual intercourse with the victim at Stack's house. Defendant signed a confession to this effect, and two officers testified that defendant told them that he had sexual intercourse with the victim. In addition, Gabriel testified that he saw defendant enter a bedroom at Stack's house where the victim was lying on the bed heavily intoxicated, and defendant stayed in the room for 5 or 10 minutes. Gabriel also testified that later, at defendant's house, he saw defendant and the victim enter defendant's bedroom, and that he observed two people engaged in sexual intercourse in defendant's bed. Although Gabriel testified that he did not see specific faces, he testified that he saw defendant's clothing on the floor by the bed, and he heard the victim's voice say "no, no, no." While Gabriel initially lied to police and he had a motive to lie insofar as he offered testimony against defendant pursuant to a plea agreement, his testimony was not impeached to the extent that it was "deprived of all probative value" or that a reasonable jury could not believe it. *Id*. at 643-644. In short, the credibility of Gabriel's testimony was within the province of the jury, and the verdict was not against the great weight of the evidence. *Id*. at 643, 647.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto

-10-