PEOPLE v SHIPLEY

Docket No. 235564. Submitted March 4, 2003, at Detroit. Decided April 24, 2003, at 9:10 A.M.

Timothy J. Shipley was convicted following a bench trial in the Oakland Circuit Court, Richard D. Kuhn, J., of three counts each of first-degree home invasion, possession of a firearm during the commission of a felony, and larceny of a firearm, offenses that stemmed from three separate home-invasion incidents. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion to suppress inculpatory statements he gave to the police. The statements were made voluntarily.

2. First-degree home invasion, where there is a larceny of a firearm during a residential breaking and entering, can be the predicate felony for a conviction of possession of a firearm during the commission of a felony. There was sufficient evidence to support the felony-firearm convictions.

3. The convictions of both first-degree home invasion and larceny of a firearm with regard to each of the three incidents do not violate the protection against double jeopardy.

4. One of the defendant's three sentences for his convictions of first-degree home invasion is invalid because it exceeds the statutory maximum sentence. One of the three sentences for his convictions of larceny of a firearm also exceeds the statutory maximum. The convictions must be affirmed and the matter must be remanded to the trial court to correct the sentences to indicate that all three of the sentences for the home-invasion convictions are for four to twenty years and all three of the sentences for the convictions of larceny of a firearm are for one to five years.

Affirmed and remanded.

1. CRIMINAL LAW — FIRST-DEGREE HOME INVASION — LARCENY OF A FIREARM — FELONY-FIREARM.

First-degree home invasion, where there is a larceny of a firearm during a residential breaking and entering, can be the predicate felony

for a conviction of possession of a firearm during the commission of a felony (MCL 750.110a[2], 750.227b, 750.357b).

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE HOME INVASION — LARCENY OF A FIREARM.

  A defendant's convictions of first-degree home invasion and larceny of a firearm based on the theft of a firearm during the commission of a first-degree home invasion does not violate the constitutional protection against double jeopardy (MCL 750.110a[2], 750.357b).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Anica Letica*, Assistant Prosecuting Attorney, for the people.

*Arthur H. Landau* for the defendant.

Before: HOEKSTRA, P.J., and SMOLENSKI and FORT HOOD, JJ.

SMOLENSKI, J. Following a bench trial, defendant was convicted of three counts each of first-degree home invasion, MCL 750.110a(2); possession of a firearm during the commission of a felony, MCL 750.227b; and larceny of a firearm, MCL 750.357b, offenses that stemmed from three separate home-invasion incidents.[1] In lower-court docket no. 00-170753-FH, defendant was sentenced to concurrent prison terms of four to thirty years for the home-invasion conviction and one to five years for the larceny conviction. In lower-court docket no. 00-170754-FH, defendant was sentenced to concurrent prison terms of four to twenty years for the home-invasion conviction and one to five years for the larceny conviction. In lower-court docket no. 00-170760-FH, defendant was sen-

---

[1] The offenses were contained in three separate lower-court files, but were tried together at a single bench trial.

tenced to concurrent prison terms of four to twenty years for the home-invasion conviction and one to fifteen years for the larceny conviction. In each case, defendant's sentences were to be preceded by a two-year term of imprisonment for the felony-firearm conviction with credit for 216 days served. Defendant appeals as of right. We affirm, but remand for the ministerial task of correcting defendant's sentences.

Officer Shannon Luther testified that, on December 11, 1999, she responded to a complaint of a "Breaking and Entering" at the Village apartment complex in Wixom, where she learned that three guns were taken from an apartment. She also testified that defendant made a written statement in which he acknowledged that he and "Steve" took thirty-five to forty-five dollars in change from an apartment.

Officer Luther further testified that she was present during a subsequent interview of defendant by Sergeant Charles Yon, during which defendant reaffirmed his involvement in the home invasion. At the end of this interview, defendant made the following written statement:

> In Building 29 in the Village Steve [Yackley] opened a back window & opened the front door. He talked me and Jeff into coming into the apartment with him.
>
> While we were inside I found a gun & showed it to Steve, but after we told him we didn't want anything to do with the guns.
>
> He went around and put them all into a duffle bag without telling us. After we got back home we found out he took the guns anyways, and we told him to get rid of them. So he took the guns and I am not sure what he did with them after that. Yackley said his friend "Peanut" might buy them, but I am not sure what he did with them.

Sergeant Yon also testified, and he confirmed Officer Luther's account of defendant's statements.

Eldon Polson testified that on December 13 and 14, 1999, he lived in a mobile home at the Commerce Meadows mobile-home park in Commerce Township. When Polson returned home from a ski trip at about 12:30 or 12:45 A.M. on December 14, 1999, he found that the door to his home was open, even though he had left it closed and locked. He found "stuff strung all over the house" and eventually found that two laptop computers, a "change jug" with about one hundred dollars worth of change, some of his wife's jewelry, a "twelve (12) gauge Remmington 1187 fully rifled semi-auto" gun, some hunting knives, and "collectible items" had been taken. Polson said that he had not given anyone permission to enter his home and take those items.

Detective Mark Venus testified that, during an interview, defendant told him about a break-in at the Stratford Villa trailer park in which "all they had taken from that residence was two lap top computers and a shotgun," which were sold in Detroit. Detective Venus said that the Stratford Villa trailer park is directly to the east of the Commerce Meadows trailer park with a fence separating the two trailer parks.

Donald Hogue testified that on December 16 and 17, 1999, he lived at 2800 Woodlawn with his wife and two children. When he returned home from a vacation in the early morning hours of December 17, 1999, his house had been "tore up pretty bad," and items were missing, including jewelry, money, a "twenty (20) gauge Ithica (phonetic) pump" shotgun, a video camera, and Christmas presents. He had given only his mother and sister permission to enter the house,

and believed that his mother had called the police before he returned home.

Detective Venus testified that defendant told him, with regard to the Woodlawn home invasion, that defendant and two others had broken into a residence and had taken a shotgun, some Christmas gifts, CD's, and jewelry. Defendant wrote the following statement regarding the above incidents: "I took a shotgun out of Stratford. One out of a house on Woodlawn & a bunch of change & a guitar off Clara & Buss Drive. 3 houses."

Before trial, defendant moved to suppress his confessions to Detective Venus regarding the Stratford Villa and Woodlawn home invasions because they were involuntary. Defendant testified at a *Walker*[2] hearing and stated:

> [Detective Venus] had some Home Invasion cases that he wanted to get taken care of, and he asked me if I had any involvement. And then he said that if I admitted to them that he could just get the cases closed, that I would only be charged with one.

Defendant further testified that he asked Detective Venus if he could "get that in writing," but the detective said "that he didn't have time to do all that, and I give you my word." Defendant indicated that he would not have told Detective Venus about his involvement in the other home invasions if it had not been for this promise. Defendant acknowledged having read and signed the "Advice of Rights" forms.

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

Detective Venus testified that he told defendant "that if there were any other B and E's in Commerce Township or any where else that we should know about that it would be in his best interests to let us know right now so everything would be taken care of at one time." However, he denied promising defendant that he would not be charged for those offenses.

In denying defendant's motion to suppress his statements to Detective Venus, the trial court stated:

> The Court has read the Rule, the Court has had an opportunity to listen to the two Defendants making their claims.[3] There is no question in this Court's mind that they were both given their Miranda Rights. There is no question in my mind that they signed a Waiver of Rights. And it is clear, common usage of the English language that it indicates that "no promises, threats, have been made to me. And no pressure or coercion of any kind has been used against me."
>
> Now, taking the standard that this Court must on making the decision on this one, the Court feels that the Defendants freely and voluntarily gave their statements and waived their Rights, because they said there wasn't any promises or coercion made. And by a preponderance of the evidence the Court is satisfied, and therefore their Motion to Suppress is denied.

Subsequently, defendant was convicted and sentenced in the manner described above for his involvement in each of these three incidents.

Defendant first argues that the trial court erred in denying his motion to suppress. We disagree. When reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's

---

[3] Defendant was tried jointly with a codefendant.

factual findings absent clear error. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made. *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997). However, deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses. *Sexton, supra* at 752.

Defendant asserts that his statements were involuntary, and thus inadmissible, because he was induced to make them by Detective Venus's promise of leniency that, if he confessed to the other home invasions, he would only be charged with one. However, "a promise of leniency is merely one factor to be considered in the evaluation of the voluntariness of a defendant's statements." *Givans, supra* at 120. Detective Venus denied making this promise and testified that what he told defendant was that it would be in his "best interest" to talk about any other home invasions at that time, rather than having defendant repeatedly return. The trial court evidently believed the detective to be more credible and we defer to the trial court regarding this determination.

Whether a statement was voluntary is determined by examining the conduct of the police. *People v Howard*, 226 Mich App 528, 538; 575 NW2d 16 (1997). Factors to consider include:

> "[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an

unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." [*Sexton, supra* at 753, quoting *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (citations omitted).]

In this case, defendant was advised of his *Miranda*[4] rights, given the waiver form to read, and then signed the waiver. One portion of the waiver form stated that no promises or threats had been made and no pressure or coercion had been used against defendant. Detective Venus testified that defendant never indicated any confusion regarding his rights. Defendant made no allegations of threats, pressure, or coercion other than the alleged promise, nor did he appear to be under the influence of alcohol or drugs and there is no indication that he was denied sleep or food. Under these circumstances, we find that defendant's statements concerning the home invasions were made voluntarily.

Defendant next argues that the evidence was insufficient to support his felony-firearm convictions. Again, we disagree. In deciding whether there was sufficient evidence to support a conviction, this Court should view the evidence in a light most favorable to

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the prosecution and decide whether any rational fact-finder could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002).

Defendant asserts that the firearm thefts could not establish the basis for a felony-firearm conviction where the predicate felony was first-degree home invasion involving theft of a firearm. In support of his position, defendant relies on our Supreme Court's decision in a similar case, *People v Mitchell*, 431 Mich 744; 432 NW2d 715 (1988). In *Mitchell*, the defendant pleaded guilty of breaking and entering an occupied dwelling with intent to commit larceny and of felony-firearm, but challenged the felony-firearm conviction on appeal on the ground that the factual basis for that conviction provided at the plea proceeding was inadequate. *Id.* at 744-745.

At the plea proceeding, the defendant in *Mitchell* described entering a residence and then picking up a gun that was on a table. *Id.* at 747-748. In unanimously concluding that there was not an adequate factual basis for the felony-firearm conviction, the Supreme Court expressed its disagreement with, and effectively overruled, this Court's earlier decision in *People v White*, 143 Mich App 229, 230-231; 371 NW2d 919 (1985), that the theft of guns was adequate to establish a factual basis for a felony-firearm conviction with breaking and entering as the predicate felony. *Mitchell, supra* at 749. Our Supreme Court tersely stated, "We do not view a conviction on these facts as consonant with the legislative purpose underlying the felony-firearm statute." *Id.* However, *Mitchell* is distinguishable from this case in one important

respect. *Mitchell* was decided in 1988, before enactment of the home-invasion statute.[5]

The felony-firearm statute states, in pertinent part:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony . . . . [MCL 750.227b(1).]

This statute requires that a person carry or have in his possession a firearm when the person is committing or attempting to commit the underlying felony in order to commit felony-firearm based on the predicate felony.

The breaking-and-entering statute, which was the predicate felony in *Mitchell*, provided, in pertinent part, "Any person who breaks and enters any occupied dwelling house, with intent to commit any felony or larceny therein, shall be guilty of a felony . . . ." MCL 750.110. Breaking and entering is not a continuing offense, but rather is completed once the offender has entered the building. *People v Squires*, 240 Mich App 454, 460; 613 NW2d 361 (2000). Therefore, the theft of the firearm in *Mitchell* could not support the defendant's felony-firearm conviction, with the breaking and entering as the predicate felony, because the breaking and entering offense was completed with entry into the building. Thus, the ensuing firearm possession was not *during the commission or attempted commission of* breaking and entering.

In contrast, the first-degree home-invasion statute applicable in this case provides, in pertinent part:

---

[5] The home-invasion statute, MCL 750.110a, was enacted in its original form on July 11, 1994.

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling . . . is guilty of home invasion in the first degree *if at any time while the person is entering, present in, or exiting the dwelling* either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.[6] [MCL 750.110a(2)(a) (emphasis added).]

As the plain language of this statute indicates, first-degree home invasion is not necessarily completed at the time of entry into a dwelling, but rather can be completed by commission of the final element of the crime while the person is present in (or leaving) the dwelling. Thus, unlike in *Mitchell*, the theft of a firearm following a break-in at a residence can occur *during the commission of* first-degree home invasion. As a result, first-degree home invasion, where there is a larceny of a firearm during a residential breaking and entering, can be the predicate felony for a felony-firearm conviction.

Here, defendant does not challenge the trial court's finding that he participated in breaking into and entering the dwellings with the intent to commit larceny, from which dwellings the firearms were in fact stolen. Accordingly, we hold that that there was sufficient evidence to support defendant's felony-firearm convictions.

Defendant also contends that being convicted of both first-degree home invasion and larceny of a firearm on the basis of a single theft of a firearm in each case violates the constitutional protection against double jeopardy. Issues involving double jeopardy are

---

[6] The home-invasion statute defines a "dangerous weapon" as including "[a] loaded or unloaded firearm, whether operable or inoperable." MCL 750.110a(1)(b)(i).

reviewed de novo by this Court. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001).

In a multiple-punishment context, "the Double Jeopardy Clause acts as a restraint on the prosecutor and the Courts, not the Legislature." *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998).

> Where the issue is one of multiple punishment rather than successive trials, the double jeopardy analysis is whether there is a clear indication of legislative intent to impose multiple punishment for the same offense. If so, there is no double jeopardy violation. [*Id.* at 695-696.]

The first-degree home-invasion statute provides, "Imposition of a penalty under this section does not bar imposition of a penalty under any other applicable law." MCL 750.110a(9). By its plain language, this statute authorizes punishment for another crime, a clear indication of legislative intent to allow multiple punishment. Accordingly, we hold that defendant's convictions of both first-degree home invasion and larceny of a firearm with regard to each of the three incidents do not violate the constitutional protection against double jeopardy.

Lastly, defendant asserts that his sentence for the conviction of first-degree home invasion in lower-court docket no. 00-170753-FH, four to thirty years' imprisonment, is invalid. We agree, as does the prosecution, given that the statutory maximum sentence is twenty years. MCL 750.110a(5). A sentence is invalid if it is beyond statutory limits. *People v Thenghkam*, 240 Mich App 29, 70; 610 NW2d 571 (2000). Defendant's sentences for the other two first-degree home-invasion convictions were for four to

twenty years' imprisonment. The likely explanation is that the court misspoke.

Similarly, defendant's sentence of one to fifteen years' imprisonment for his larceny-of-a-firearm conviction in lower-court docket no. 00-170760-FH is invalid. The statutory maximum sentence for that offense is five years. MCL 750.357b. This appears to be a typographical error on the judgment of sentence because the court orally stated the sentence was for one to five years' imprisonment.

It is apparent from the record that the court intended to impose identical sentences for all three incidents, four- to twenty-year prison terms for the first-degree home-invasion convictions and one- to five-year prison terms for the larceny-of-a-firearm convictions. Therefore, this case must be remanded in order to amend defendant's judgment of sentence to reflect these changes.

Affirmed, but remanded for the ministerial task of correcting defendant's sentences as discussed above. We do not retain jurisdiction.