# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CLARENCE SAMUEL HUNTER,

      Defendant-Appellant.

UNPUBLISHED
May 26, 2016

No.  321583
Wayne Circuit Court
LC No.  13-000967-FC

Before:  GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of second-degree murder, MCL 750.317, being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant to prison terms of 40 to 60 years for the murder conviction and 4 to 10 years for the felon-in-possession conviction, to be served concurrently, but consecutive to a two-year prison term for the felony-firearm conviction.  Defendant appeals as of right, and we affirm.

Defendant's convictions arise from the November 1, 2012, shooting death of Kareem Geiger.  Testimony at trial indicated that defendant and Geiger had been involved in a heated argument earlier that day after Geiger refused to sell defendant a five-dollar bag of marijuana for four dollars.  Geiger was later shot while walking on the street.  After interviewing a witness who had observed the argument between Geiger and defendant, and other witnesses who had observed the shooting, police officers arrested defendant on January 7, 2013.  Defendant was interviewed by officers Nancy Foster and Kevin Wight at the police precinct in an interview room adjacent to the cellblock where defendant was being held.

At the beginning of the interview, Foster provided defendant with a written statement of his constitutional rights.  Foster read through each right with defendant and defendant acknowledged that he understood each right.  After reading the entire statement of rights together with Foster, defendant signed a waiver of those rights and agreed to talk with the officers. During the interview, defendant repeatedly denied any involvement in Geiger's death.  The interview was eventually terminated by the officers, and the officers and defendant left the interview room.  The interview resumed in the interview room a short time later, however, and at that point defendant admitted to shooting Geiger.

-1-

Before the trial court, defendant moved to suppress his confession on the ground that the confession was not voluntary and was therefore inadmissible. Defendant claimed that after the first part of the interview ended and he was being returned to his cell, Foster told him that if he confessed she would get him a "lower charge," but if he did not confess, he would never see his children or talk to his mother again. According to defendant, Foster told him to say that he shot the victim because he felt disrespected after the victim put a gun in his mouth. At the hearing on the motion to suppress, Foster testified that she did not promise defendant anything during the break in the interviews, nor did she threaten him. Foster testified that after defendant was escorted to his cell by a detention officer, defendant asked Foster what was going to happen next and she replied that she was going to talk to the prosecutor about the interview. According to Foster, defendant then asked her if they could resume the interview. The officers and defendant returned to the interview room and defendant admitted to shooting Geiger. Defendant subsequently asked to speak with an attorney and the detectives terminated the interview. At the conclusion of the hearing on the motion to suppress, and after viewing a DVD recording of defendant's interview, the trial court denied defendant's motion to suppress the confession.

Defendant's sole issue on appeal, raised by both appointed appellate counsel and by defendant in a pro se Standard 4 brief,[1] is that the trial court erred by denying his motion to suppress his confession. We disagree.

We review the voluntariness of a confession de novo, but review the trial court's factual findings for clear error. *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012). A finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). If resolution of a disputed fact depends upon the credibility of the witnesses or the weight of the evidence, this Court will defer to the trial court's determination. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000).

A determination of voluntariness is made by examining the conduct of the police. *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003). A confession is voluntary if the totality of all the surrounding circumstances shows that it is the product of an essentially free and unconstrained choice and not the result of an overborne will. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). Relevant factors in determining voluntariness include the defendant's age; the defendant's education or intelligence level; the extent of the defendant's previous experience with the police; whether the defendant was subjected to repeated and prolonged questioning; the length of the defendant's detention before giving his statement; whether the defendant was advised of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he made his statement; whether the defendant was injured, intoxicated or drugged, or in ill health when he made the statement; whether the defendant was deprived of food, sleep, or medical attention; and whether he was physically abused or threatened with abuse. *Cipriano*, 431 Mich at 334. We also consider whether the defendant was promised leniency in exchange for a confession, *Shipley*, 256 Mich App at 373,

---

[1] Filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

and whether the police misrepresented the evidence against the defendant. *People v Givans*, 227 Mich App 113, 122-123; 575 NW2d 84 (1997). "The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness," *Cipriano*, 431 Mich at 334, and no single factor is determinative. *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005).

In this case, a review of the record in light of the relevant factors indicates that the confession was voluntary. The trial court did not make a finding regarding defendant's age or education level, but defendant told the officers that he was 25 years old and testified that he was able to read and write, though defendant also testified that he had an unspecified learning disability. The trial court found that defendant "was familiar with the criminal justice system," and "talked with the police before." Defendant does not take issue with that finding, which was supported by his testimony at the suppression hearing.

Regarding the length of the police interrogation, the DVD recording shows that police twice interviewed defendant during the afternoon hours of a single day. The two interviews together lasted a little less than three hours.[2] The trial court found that defendant had been advised of his constitutional rights, understood them, and agreed to waive them. Those findings are supported by the DVD recording, which shows that defendant was advised of his rights, acknowledged that he understood his rights, signed an advice-of-rights form, and agreed to speak to the police. At the hearing before the trial court on the motion to suppress defendant's statement, defendant acknowledged that he had been advised of his rights before making his statement and had understood those rights. A review of the record indicates that nothing in defendant's behavior during the police interview suggests that defendant was injured, ill, or intoxicated.[3] The trial court found that defendant had been offered "some food and something to drink" and he declined, which is supported by the DVD.

With regard to promises of leniency, the trial court found that the officers did not make any promises or threats to induce defendant's statement, and this finding is supported by Foster's testimony. Although defendant testified that Foster promised him a "lower charge" and threatened that he would never see his children or talk to his mother again, the trial court found that his testimony was not credible, and the DVD recording does not support defendant's claim.

---

[2] The trial court did not address whether there was an unnecessary delay in bringing defendant before a magistrate before he made his statement, but defendant does not claim that this was a relevant factor.

[3] Although defendant asserts that he had a head injury, he did not mention any injury during the interview or at the suppression hearing. He first mentioned a head injury at trial. Review of a trial court's ruling at a suppression hearing is limited to "the information known to the trial court at the time it denied" the motion to suppress. *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983). Further, while defendant testified at the hearing that he was taking Xanax, there is nothing in the record regarding when it was prescribed, the dosage he took, or its effects. Defendant responded appropriately to questions during his interview and his conduct did not suggest that he was intoxicated or under the influence of any substances.

The trial court also rejected defendant's testimony that Foster told him what to say. That finding is supported by Foster's testimony, which the trial court found credible. It is also supported in part by the DVD, in which Foster remarks that defendant "just told me" back at the cell "the dude put a pistol in my mouth" and defendant did not dispute that statement during the interview. Further, the trial court found that defendant's testimony at the hearing was not credible, whereas defendant "was compelling in his credibility" during his recorded confession.

The recorded interview does suggest that the officers exaggerated the strength of their case when interviewing defendant; the DVD recording shows that the officers repeatedly told defendant that they had witnesses who could identify him as the gunman. Although this claim was not borne out at trial, the fact that police falsely claim to have evidence against a defendant does not, in and of itself, render a confession involuntary. *Givans*, 227 Mich App at 123. Moreover, the false representations were made during the first interview session, and they obviously had no effect because defendant questioned the veracity of the statements and repeatedly denied any involvement in the crime during the first interview session.

After reviewing the entire record and considering the totality of the circumstances surrounding defendant's confession, we conclude that the facts as found by the trial court are not clearly erroneous and they support the trial court's determination that defendant's statement was voluntarily made[4]. The trial court therefore did not err by denying defendant's motion to suppress.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[4] Defendant accurately notes on appeal that the waiver of the right against self-incrimination also must be voluntary to be valid. See *Colorado v Connelly*, 479 US 157, 170; 107 S Ct 515; 93 L Ed 2d 473 (1986). Defendant, however, does not argue that his waiver of his rights was not voluntary and the record reveals no such lack of voluntariness.