# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
December 21, 2017

v

ERNEST JOHNSON,

      Defendant-Appellee.

No. 334636
Wayne Circuit Court
LC No. 16-003296-01-FH

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), larceny in a building, MCL 750.360, larceny of personal property valued at $1000 or more, but less than $20,000, MCL 750.356(3)(a), and larceny of a firearm, MCL 750.357b. Defendant was sentenced, as a third habitual offender, MCL 769.11, to concurrent terms of two to four years' imprisonment for the larceny in a building conviction, three to five years' imprisonment for the larceny of personal property valued at $1000 or more, but less than $20,000 conviction, and three to five years' imprisonment for the larceny of a firearm conviction, all of which are to run consecutive to a term of 10 to 20 years' imprisonment for the first-degree home invasion conviction. We affirm defendant's convictions, but remand for further proceedings.

This case arises from a home invasion and larceny that defendant participated in on March 8, 2016, in Detroit. Video footage from a home security system showed that defendant stood on the porch and acted as a lookout while his accomplice, Jay Starks, entered through a basement window and moved through the house. While in the house, Starks stole a number of valuable items, including a set of Invicta watches, a Pandora bracelet, two pairs of designer eyeglasses, and a .25 caliber handgun. Defendant was later apprehended after he was identified on the video.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that insufficient evidence exists to convict him of first-degree home invasion and larceny of a firearm. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in

the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id.*

Defendant does not dispute that he served as a lookout while Starks committed the home invasion and larceny, but he still denies that he is guilty, as an aider and abettor, of first-degree home invasion and larceny of a firearm. In order to convict a defendant of aiding and abetting, the following elements must be established:

> (1) [T]he crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time [the defendant] gave aid and encouragement. [*People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).]

An aider and abettor's state of mind can be inferred from the surrounding facts and circumstances, including the participation of the defendant in planning and executing the crime. *Carines*, 460 Mich at 758. Additionally, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Starks and defendant communicated with each other via Facebook and discussed, through coded language, their plan to break into a house. This indicates that defendant engaged in the planning of the offense. Defendant certainly aided in the execution of the crime by acting as a lookout. Security camera footage shows defendant standing on the porch and repeatedly knocking on the door, and also shows Starks entering the house through a basement window immediately after defendant is seen making a phone call. It can be inferred from these facts that defendant aided and abetted in the commission of the crimes.

Because defendant helped Starks plan and execute the home invasion, he is considered an aider and abettor to any crime that Starks is principally liable for. *People v Robinson*, 475 Mich 1, 14-15; 715 NW2d 44 (2006). The question turns on whether there was sufficient evidence to convict defendant of first-degree home invasion and larceny of a firearm based on Stark's actions. Under MCL 767.39, "every person concerned in the commission of an offense, whether he directly commits the act . . . or procures, counsels, aids, or abets in its commission . . . shall be punished as if he had directly committed such offense." *Id.* at 5-6. Furthermore, defendant is also liable for the "natural and probable consequences" of the offense, meaning that criminal responsibility may be imposed upon him for anything that "might be expected to happen if the occasion should arise" out of the criminal action. *Id.* at 9.

Defendant argues that he did not have the intent to commit first-degree home invasion, primarily because he knocked on the door of the house and attempted to ensure that nobody was home when Starks entered. First-degree home invasion "can be committed in several different ways, each of which involves alternative elements necessary to complete the crime." *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). The Michigan Supreme Court has provided the following elements for first-degree home invasion: (1) the defendant broke and entered a dwelling or entered the dwelling without permission, (2) when the defendant did so, he intended

to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling, and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. *Id*.; MCL 750.110a(2).

This Court has stated that "first-degree home invasion is not necessarily completed at the time of entry into a dwelling, but rather can be completed by commission of the final element of the crime while the person is present in (or leaving) the dwelling." *People v Shipley*, 256 Mich App 367, 377; 662 NW2d 856 (2003). Starks committed first-degree home invasion by assisting in the breaking and entering of the house, with the intent to commit a larceny, while in possession of a firearm. *Wilder*, 485 Mich at 43. Defendant's claim that he did not foresee that Starks would steal the gun does not mean that larceny of a firearm was not an event that "might be expected to happen" if the opportunity presented itself. *Robinson*, 475 Mich at 9. Defendant is liable for any crime for which Starks could be convicted, and the fact that Starks found a gun, stole it, and raised the offense to first-degree home invasion, as opposed to second-degree home invasion,[1] is within the realm of possibilities that constitute natural and probable consequences of defendant's criminal actions. Therefore, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could find that sufficient evidence exists to convict defendant of larceny of a firearm and first-degree home invasion under an aiding and abetting theory.

Defendant also argues there was insufficient evidence to convict him of larceny of a firearm. A person commits larceny of a firearm "by stealing the firearm of another person . . . ." MCL 750.357b. Defendant's argument that he cannot be convicted of this crime because he did not know that Starks would steal the gun while committing a home invasion lacks merit. The chance that Starks might find a gun and decide to steal it is one of the many natural and probable consequences that could arise from aiding and abetting the commission of a home invasion. Therefore, viewed in the light most favorable to the jury, sufficient evidence exists to convict defendant of larceny of a firearm through an aiding and abetting theory. Accordingly, this claim must fail.

## II. SENTENCING

Defendant also argues that the trial court erred when it imposed a consecutive sentence for his first-degree home invasion conviction because it failed to articulate particularized reasons for doing so. We agree.

"[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

In the Michigan courts, "concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388,

---

[1] Second-degree home invasion does not require the defendant to possess a firearm at all during the commission of the offense. MCL 750.110a(3).

401; 819 NW2d 55 (2012) (quotation marks and citation omitted). Defendant was sentenced to a consecutive term of 10 to 20 years' imprisonment pursuant to MCL 750.110a(8), which permits discretionary consecutive sentencing for a home invasion conviction where the crimes that defendant was convicted of arise out of the same transaction. In *Norfleet*, 317 Mich App at 654, as a matter of first impression, this Court decided that the discretionary imposition of consecutive sentences is reviewable for an abuse of discretion. The abuse of discretion standard, as defined in *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), states:

> [A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome . . . . An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside this principled range of outcomes.

Every consecutive sentence "is its own discretionary act and must be separately justified on the record." *Norfleet*, 317 Mich App at 665. A trial court is required to "give particularized reasons—with reference to the specific offenses and the defendant—to impose each sentence . . . consecutive to the others." *Id.* at 666. In *Norfleet*, the trial court spoke generally about the "defendant's background, his history, [and] the nature of the offenses involved." *Id.* (quotation omitted). This Court did not find that a general overview of the offense or the defendant's personal history was sufficient to justify consecutive sentencing. *Id.* "[T]he trial court did not give particularized reasons—with reference to the specific offenses and the defendant—to impose each sentence . . . consecutive to the others." *Id.* Thus, the trial court must be highly specific in explaining its rationale for each individual consecutive sentence. *Id.*

At sentencing, the trial court highlighted the nature of the crime that defendant committed, taking note of the fact that defendant brazenly acted as a lookout during a home invasion that was committed in broad daylight. The trial court also discussed the loss of security that King and his family experienced following the home invasion. Additionally, the trial court went into detail about defendant's prior misconduct, stating that "[w]hile he was incarcerated, he did have 17 major misconducts in a three-year period while in prison for armed robbery. When paroled, he picks up a new felony that got him additional time. Paroled once again . . . he picks up this particular case. Clearly the people need to be protected."

However, the trial court did not state why a consecutive sentence was appropriate in this case or how this defendant, or his offense, differed in nature from other defendants who have committed first-degree home invasion where a concurrent sentence would be appropriate. The court's general discussion of defendant's history and the nature of the offenses, while compelling, do not explain the court's decision to impose a consecutive sentence as required under *Norfleet*. This is understandable, considering *Norfleet* was decided shortly after defendant's sentence was imposed. Nevertheless, in order for this Court to accurately evaluate whether a consecutive sentence was warranted, the trial court must identify "particularized reasons—with reference to the specific offenses and the defendant—to impose each sentence . . .

consecutive to the others." *Id.* Therefore, defendant has demonstrated that the trial court erred by imposing a consecutive sentence without articulating its reasons for doing so on the record.[2]

We affirm defendant's convictions, but remand for further sentencing proceedings consistent with this opinion. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

---

[2] Defendant also briefly argues that the trial court abused its discretion by imposing a consecutive sentence at all. However, we note that because MCL 750.110a(8) specifically authorizes the trial court to impose consecutive sentences for crimes arising out of the same transaction, it cannot be said that the trial court abused its discretion simply by exercising its statutorily authorized power to impose a consecutive sentence. Accordingly, this claim lacks merit.

# Court of Appeals, State of Michigan

# ORDER

People of MI v Ernest Johnson

Docket No.    334636

LC No.        16-003296-01-FH

Kathleen Jansen
Presiding Judge

Mark J. Cavanagh

Thomas C. Cameron
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED to the trial court to make specific findings for the trial court's imposition of a consecutive sentence of Count I to concurrent Counts II, III and IV pursuant to *People v Norfleet,* 317 Mich App 649, 654; 897 NW2d 195 (2016).

The trial court shall make its findings within 28 days of the Clerk's certification of this order, and file with this Court its written findings.   The proceedings on remand are limited to this issue.

The appellant shall have 56 days from the issuance of the trial court's findings to file a responsive brief, and the appellee shall have an additional 21 days to file a supplemental response.

This Court retains jurisdiction.

/s/ Kathleen Jansen

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 21, 2017
Date

Chief Clerk