*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JENNIFER ANN MONROE,

      Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 357631
Shiawassee Circuit Court
LC No. 19-004471-FH

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

K. F. KELLY, J. (*dissenting*).

I respectfully dissent from the majority's holding that the questioning of defendant in her hospital room violated *Miranda*.[1] Because defendant's statements were voluntary and not made while in custody, I would affirm the trial court's order denying defendant's motion to suppress.

"When reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's factual findings absent clear error." *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003); see also *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004) ("The totality of the circumstances surrounding both statements indicates that they were made voluntarily."). A clear error occurs if the finding "leaves this Court with a definite and firm conviction that a mistake was made." *Shipley*, 256 Mich App at 373.

"The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018) (quotation marks and citation omitted). However, "the trial court's factual findings concerning the circumstances surrounding statements to the police" are reviewed for clear error. *Id.*

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Both the United States Constitution and the Michigan Constitution guarantee that criminal defendant receive due process of law. US Const, Am XIV; Const 1963, art 1, § 16. "[T]he use of an involuntary statement in a criminal trial, either for impeachment purposes or in the prosecution's case in chief, violates due process." *People v Cipriano*, 431 Mich 315, 331; 429 NW2d 781 (1988). "Whether a statement was voluntary is determined by examining the conduct of the police." *Shipley*, 256 Mich App at 373. In *Cipriano*, the Michigan Supreme Court articulated the following factors to guide courts in assessing whether a statement was given voluntarily:

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

> The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [*Cipriano*, 431 Mich at 334 (citations omitted).]

For a confession to be involuntary, "there must be a substantial element of coercive police conduct" because "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *People v Wells*, 238 Mich App 383, 388; 605 NW2d 374 (1999) (quotation marks and citations omitted); see also *People v Posey*, 334 Mich App 338, 368; 964 NW2d 862 (2020) (quotation marks and citation omitted) ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

In reversing the trial court's order denying defendant's motion to suppress, the majority relies on *Mincey v Arizona*, 437 US 385; 98 S Ct 2408; 57 L Ed2d 290 (1978). In that case, the United States Supreme Court explained the circumstances surrounding the interrogation of the defendant:

> Mincey was brought to the hospital after the shooting and taken immediately to the emergency room where he was examined and treated. He had sustained a wound in his hip, resulting in damage to the sciatic nerve and partial paralysis of his right leg. Tubes were inserted into his throat to help him breathe, and through his nose into his stomach to keep him from vomiting; a catheter was inserted into his bladder. He received various drugs, and a device was attached to

his arm so that he could be fed intravenously. He was then taken to the intensive care unit.

> At about eight o'clock that evening, Detective Hust of the Tucson Police Department came to the intensive care unit to interrogate him. Mincey was unable to talk because of the tube in his mouth, and so he responded to Detective Hust's questions by writing answers on pieces of paper provided by the hospital. Hust told Mincey he was under arrest for the murder of a police officer, gave him the warnings required by *Miranda v. Arizona*, and began to ask questions about the events that had taken place in Mincey's apartment a few hours earlier. Although Mincey asked repeatedly that the interrogation stop until he could get a lawyer, Hust continued to question him until almost midnight. [*Id*. at 396 (citation omitted).]

The United States Supreme Court stated that it was "hard to imagine a situation less conducive to the exercise of a rational intellect and a free will than Mincey's." *Id*. at 398 (quotation marks omitted). The Court emphasized that Mincey was nearly in a coma; the questioning took place only a few hours after the injuries were inflicted; he described his leg pain as "unbearable;" he was confused and provided incoherent answers; his body was "encumbered by tubes, needles, and [a] breathing apparatus;" and he asked for the interrogation to end and requested a lawyer. *Id*. at 398-401.

Unlike the defendant in *Mincey*, defendant in this case never requested a lawyer or indicated any desire to end the officers' questioning. See *Mincey*, 437 US at 396. Defendant did not complain of pain, was coherent, and provided logical responses to the detectives' questions. There was no evidence that defendant was threatened, abused, or promised anything in exchange for her statement. See *People v Ryan*, 295 Mich App 388, 396-397; 819 NW2d 55 (2012) (explaining that voluntariness depends, in part, on "whether the accused was physically abused; and whether the suspect was threatened with abuse."). Defendant was only one day removed from suffering serious injuries and undergoing surgery, and Dr. Miller testified that she was sleep-deprived; however, this was attributable to the events that occurred at her home as well as her treatment at the hospital, but and not to any police misconduct. See *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000) ("[W]hether a waiver of Miranda rights is voluntary depends on the absence of police coercion.").

In *Posey*, 334 Mich App at 367, this Court recently addressed a similar issue to that presented here. There, we concluded that a defendant's hospitalization with serious injuries and use of pain medication alone is not sufficient to render a statement involuntary. The defendant was interviewed by police the day after he was hospitalized and operated on for a gunshot wound; similarly to the present case, the defendant relied on *Mincey* for the proposition that his statements were involuntary. *Id*. at 364, 366. The defendant argued that the statements were involuntary because he "was experiencing some pain from his injuries and was affected by his pain medication," but we concluded nonetheless that there was "no indication that his condition was so debilitating as to make him lose his free will." *Id*. at 366. We emphasized that the defendant was "alert and articulate;" there was "no sign that he was impaired by any medication during the interview;" he never requested to end the interview; "he was alert and conscious the whole time;"

and there was "no evidence that [his] mental condition was significantly compromised or diminished." *Id*. at 366-367.

Like the defendant in *Posey*, defendant was interviewed the day after she had surgery to treat serious injuries she sustained during the altercation. *Posey*, 334 Mich App at 367. And similar to *Posey*, there was "no indication that [her] condition was so debilitating as to make [her] lose [her] free will." *Id*. at 366. Defendant was alert and articulate, and there was no sign that her mental condition was compromised. Similar to *Posey*, there was no evidence that defendant was negatively affected by the pain medication. *Id*. Indeed, while Dr. Miller testified about the effects morphine and fentanyl *could* have on a person, he could not say how the medication did in fact affect defendant.

I would, therefore, conclude the trial court did not commit clear error when it concluded defendant's statements were voluntarily given. Accordingly, I would affirm the trial court's order denying defendant's motion to suppress.

I also believe the trial court did not clearly err when it found that defendant was not in "custody" at the time of her questioning. The Unites States Constitution and the Michigan Constitution both protect the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. Under *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed2d 694 (1966), "the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *Barritt*, 325 Mich App at 562. "Custody must be determined on the basis of how a reasonable person in the suspect's situation would perceive his or her circumstances and whether the reasonable person would believe that he or she was free to leave." *People v Roberts*, 292 Mich App 492, 504; 808 NW2d 290 (2011), lv den 490 Mich 893 (2011). However, in circumstances in which the individual interrogated cannot leave for reasons unrelated to police conduct, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v Bostick*, 501 US 429, 436; 111 S Ct 2382; 115 L Ed2d 389 (1991). Relevant factors in this analysis include: "(1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning." *Barritt*, 325 Mich App at 562-563 (citations omitted). "Whether an individual is effectively 'in custody' is based on the totality of the circumstances." *Roberts*, 292 Mich App at 505. "[T]he fact that the defendant was in the hospital does not automatically imply that the environment was coercive." *People v Kulpinski*, 243 Mich App 8, 25; 620 NW2d 537 (2000).

In this case, the trial court's finding that defendant was not in custody was not clearly erroneous. Defendant was questioned in her hospital room as opposed to a crime scene or a police interrogation room. The questioning lasted only two hours, at which point the detectives left. The detectives never told her that she was under arrest, that she had done something wrong, or that she would be going to jail, and defendant never requested an attorney or attempted to end the interview. Detective Lamay testified that defendant was not arrested before, during, or immediately after the interview. Defendant would not have been able to physically leave the room because she was attached to medical equipment, but this equipment was set up by medical personnel, and there is no evidence that the purpose of this equipment was to restrain her movement. Moreover, Detective Lamay testified that an officer was not posted at defendant's room until "some hours" later or

"maybe even the next day," and defendant was not formally arrested until she was released from the hospital the following week. In other words, there is nothing in the record that supports defendant's assertion that she was in custody at the time of the interview.

The majority's reliance on *Yarborough v Alvarado*, 541 US 652, 665; 124 S Ct 2140; 158 L Ed 2d 938 (2004), is, in my opinion, misplaced. While in that case the United States Supreme Court stated that police questioning that lasts two hours may indicate a custodial environment, the Court, by no means, stated that such a fact necessitates a finding of custody. See *id*. (concluding the state court's application of the federal standard for custody was "reasonable"). Moreover, unlike defendant here, the defendant in Yarborough was questioned at the police station and was denied when he asked if his parents could be present during the questioning. *Id*.

In my view, the trial court's finding that defendant was not in custody during the questioning was not clear error. I would, therefore, affirm the trial court's order denying defendant's motion to suppress.

/s/ Kirsten Frank Kelly