*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIC DAVID RAY, also known as ERIC DAVID RAY, SR.,

Defendant-Appellant.

UNPUBLISHED
February 09, 2026
11:07 AM

No. 375088
Kent Circuit Court
LC No. 23-011070-FH

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Defendant, charged with two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (victim under 13 years old, perpetrator 17 years or older), appeals by leave granted[1] the trial court's order denying his motion to admit evidence of a prior allegation of sexual abuse made by the complainant, JF. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after two minor children reported sexual abuse by their stepgrandfather, defendant.

In 2017, JF, who was 10 years old, disclosed to her neighborhood friend that her stepfather (defendant's son) had been sexually abusing her. Specifically, JF said that her stepfather would touch her vagina, force her to touch his penis, and force her to engage in anal sex. JF then disclosed this same information to her neighborhood friend's sister, who was a Children's Protective Services worker. Consequently, a Department of Health and Human Services employee visited the home and arranged for a Child Advocacy Center (CAC) interview. But before the interview, JF told her mother that she "made it up," and said the same thing to the CAC forensic interviewer.

---

[1] *People v Ray*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 375088).

JF explained that she "said things that weren't true" because she was "[a]fraid to tell her it was a lie." In explaining why she lied about the sexual abuse, JF told the forensic interviewer that "after the fact I couldn't turn back, then I had to tell her and I was too afraid to tell her I was lying." JF noted that her mother "said after this is all over then we're just going to forget it, so." At the end of the interview, the forensic interviewer asked JF if she said anything that was untrue during their interview, and JF responded in the negative. The prosecutor declined to bring charges against JF's stepfather.

In June 2023, JF's mother received a phone call from defendant's former longtime girlfriend, who told JF's mother that she did not plan to live beyond the next 48 hours and that she and defendant "molested two of your children, three that I know of." She further stated that defendant forced JF's mother's eight-year-old son to perform fellatio on him. Moreover, the girlfriend said that she overheard defendant's son tell defendant that he "could never pass a lie detector test regarding molesting his children." After which, JF's mother asked JF if her stepfather or defendant ever touched her inappropriately. JF began crying and told her mother that approximately five or six years before that conversation, "they had touched her breasts as well as her vagina inside her pants." JF further admitted that her 2017 allegations against her stepfather *were* true and that his sexual abuse did not end until approximately 2022. Thereafter, JF's mother contacted law enforcement.

A felony information was subsequently filed charging defendant with two counts of CSC-II, MCL 750.520c(2)(b). The information accused defendant of sexually assaulting JF and AM without penetration between January 2015 and December 2018, at which time the victim was under 13 years old. Defendant pleaded not guilty to both counts, and the parties stipulated to file defendant's motion to admit evidence under seal pursuant to MCR 8.119(I).

The trial court held an *in camera* evidentiary hearing. All parties agreed that defendant had the burden of proof by a preponderance of the evidence as to whether the allegation in question was false. JF testified that she remembered accusing her stepfather in 2017 of inappropriately touching her over a two-year period. When asked if this was true, JF said, "Yes." After admitting that she made an accusation in 2017 against her stepfather, she also admitted that she shortly thereafter recanted first to her mother and then to two forensic interviewers. JF was then asked whether her stepfather ever sexually assaulted her, to which JF testified, "[Y]es." When asked why she lied in the past, JF told the trial court that she "felt trapped by [defendant]'s family. They were convincing me that I would lose everything if I went through with it, so I took it back." The trial court also heard testimony from JF and AM's mother.

An opinion and order denying defendant's motion was later issued. The trial court found that JF's 2017 sexual-abuse allegations against her stepfather were "true, not false" and that her "reasons for lying about the sexual abuse in 2017 [were] credible." Because defendant failed to carry his burden "either by clear and convincing evidence or preponderance of the evidence standard," the trial court determined that JF should "should receive the full protection of the rape-shield statute" and denied defendant's motion.

## II.  STANDARDS OF REVIEW

This Court reviews a trial court's factual findings for clear error.  MCR 2.613(C); *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003).  "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made."  *Shipley*, 256 Mich App at 273.  "However, deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses."  *Id.*

"This Court reviews evidentiary decisions for an abuse of discretion."  *People v Butler*, 513 Mich 24, 29; 6 NW3d 54 (2024).  "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes."  *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).  "The trial court's decision on close evidentiary questions cannot by definition be an abuse of discretion."  *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001) (quotation marks and citation omitted).  "However, a trial court's construction of a statute, such as the rape-shield statute, and interpretation of constitutional issues, such as the right to confrontation, are questions of law that are reviewed de novo."  *Butler*, 513 Mich at 29.

## III.  TRIAL COURT FINDING

Defendant contends that the trial court clearly erred by finding that JF's 2017 allegations were "true, not false" because JF admitted that those allegations were fabricated.

"The Michigan [rape-shield] statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.  The statute also protects against surprise to the prosecution."  *Michigan v Lucas*, 500 US 145, 149-150; 111 S Ct 1743; 114 L Ed 2d 205 (1991).  The rape-shield statute, MCL 750.520j, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof.  The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).  If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge

may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). [Footnote omitted.]

"In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *People v Hackett*, 421 Mich 338, 349; 365 NW2d 120 (1984).

There is evidentiary support for the trial court finding that JF's 2017 allegations against her stepfather were "true." At the November 2024 *in camera* hearing, JF explained that she felt pressured and "trapped" by defendant's family because they convinced her that she would "lose everything" if she pursued the allegations against her stepfather. She recalled feeling "everything" and as if "nobody believed [her] anyways." She especially felt this way because she was accusing her stepfather and mother's husband. JF further testified that her stepfather's sexual abuse continued beyond her recantation in 2017. Additionally, the trial court heard testimony from JF's mother regarding defendant's former longtime partner, who admitted that she and defendant sexually abused her children. Taken together, there was more than enough evidentiary support for the trial court finding that JF's 2017 allegations were "true." The trial court was uniquely situated to judge the credibility of witnesses at the *in camera* hearing, and we defer to its credibility determination. See *Shipley*, 256 Mich App at 373. Because the trial court found that JF's 2017 allegations of sexual abuse against her stepfather were "true" on the basis of JF's "demeanor, presentation, and stated reasons for lying," the trial court did not clearly err by finding that JF's 2017 allegations were true. See *id.*[2]

Contrary to defendant's assertions, JF's 2017 allegations are not relevant to any motive that she might have against defendant because the 2017 allegations were singularly made against her stepfather, not defendant. Because the right to confront and cross-examine witnesses "does not include a right to cross-examine on irrelevant *issues*," *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982), defendant was not denied his right to confront witnesses. Although evidence may be offered to demonstrate "ulterior motive for making a false charge" or showing a history of making "false accusations," the trial court found JF's "reasons for lying about the sexual abuse in 2017 credible," and we defer to the trial court on that credibility determination. See *Hackett*, 421 Mich at 348-349, 351.

Even though the trial court failed to "determine the appropriate standard of proof for the admissibility of evidence of prior false allegations of sexual assault by the complainant," the trial court determined that "either by clear or convincing evidence or preponderance of the evidence standard of proof," defendant failed to meet his burden. See *People v Pressey*, 515 Mich 1014; 12 NW3d 437 (2024). It is therefore unnecessary for us to resolve which standard applies to these motions.

---

[2] To the extent defendant argues that JF did not in 2023 recant her 2017 recantation about being anally penetrated, we note that this argument was not presented to the trial court. Additionally, the 2023 interview transcript is ambiguous as to whether JF recanted the act, or was stating that she did not understand the word's meaning in 2017.

The trial court did not abuse its discretion by denying defendant's motion to admit evidence. See *Butler*, 513 Mich at 29.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica